552 So.2d 590 (1989)
STATE of Louisiana, Appellee,
v.
Albert Isaac MATTHEWS a/k/a Iceberg, Appellant.
No. 20,945-KA.
Court of Appeal of Louisiana, Second Circuit.
November 1, 1989.
*592 Jerry Jones, Monroe, Richard H. Morgan, Pontiac, Mich., for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, James Norris, Dist. Atty., Monroe, Joseph T. Mickel, Asst. Dist. Atty., Monroe, for appellee.
Before FRED W. JONES, Jr., SEXTON and LINDSAY, JJ.
LINDSAY, Judge.
The defendant, Albert Isaac Matthews, appeals his convictions and sentences for attempted possession of marijuana and attempted possession of cocaine, violations of LSA-R.S. 40:966, 40:967 and 40:979. For attempted possession of cocaine, the defendant was sentenced to two and a half years at hard labor and fined $2,500 or, in default of payment of the fine, to serve an additional one year. For attempted possession of marijuana, the defendant was sentenced to ninety days in jail, a fine of $250 or, in default of payment of the fine, to serve an additional ninety days. The sentences for these two offenses were ordered to be served concurrently with each other but consecutively with any other sentences imposed upon the defendant for other offenses. For the following reasons, we affirm.

FACTS
In July, 1987, the Metro Narcotics Unit in Monroe, Louisiana, received information from a confidential informant that the defendant was selling cocaine. The confidential informant also stated that he told law enforcement officials that he had made several purchases of cocaine from the defendant inside the defendant's residence. The confidential informant observed cocaine in vehicles parked at the defendant's residence. The confidential informant made a purchase of cocaine from the defendant with money provided by law enforcement officials. The serial numbers on the money were recorded by the Metro Narcotics Unit. The confidential informant reported that the defendant told him that additional cocaine would be available for purchase at the defendant's residence.
The confidential informant had provided reliable information to law enforcement officials in the past and, based upon the information provided, a warrant was obtained to search the defendant's residence.
At 2:50 a.m. on July 29, 1987, officers of the Metro Narcotics Unit gained entrance to the residence through a kitchen door. The defendant's grandmother and several children were in the main portion of the residence. An apartment, consisting of a den and a loft bedroom, was located in the rear portion of the residence and was locked off from the remainder of the house *593 by a deadbolt lock. Entry was gained to this area by force.
The defendant was found in bed in the bedroom of the apartment. He was placed under arrest and a search of the previously locked apartment area was conducted. Cocaine and marijuana were found in plain view on a coffee table in the apartment. A partially burned marijuana cigarette was found on the floor beside the coffee table and another partially burned marijuana cigarette was found in an ash tray beside the defendant's bed. A box containing nineteen packages of cigarette rolling papers and three one-hundred-count boxes of razor blades were also seized along with an expired driver's license issued to the defendant, listing the residence as his address. Several items of correspondence were seized which were addressed to the defendant at the residence as well as a recent credit card receipt listing the residence as his address. Law enforcement officials also recovered $205 in cash from the pocket of the shorts the defendant was wearing. The serial numbers on some of the bills were determined to be the same as those on the money used by the confidential informant to purchase drugs.
The defendant was charged by indictment with possession of marijuana, second offense, and possession of cocaine. He was tried by jury and convicted of attempted possession of marijuana and attempted possession of cocaine. The defendant has appealed his convictions and sentences urging several assignments of error.

CONSTRUCTIVE POSSESSION
The defendant claims there was insufficient evidence to show beyond a reasonable doubt that he had dominion and control over the contraband or that he knowingly possessed it. This assignment of error is without merit.
First, the defendant was convicted of attempted possession of both cocaine and marijuana. In applying the proper standards of review to the facts in this record, there is sufficient evidence upon which the jury could reasonably have found the defendant guilty not merely of an attempt, but of actual possession of both cocaine and marijuana.
The constitutional standard of review for sufficiency of evidence to support a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Moore, 490 So.2d 588 (La.App. 2d Cir.1986), writ denied 494 So.2d 1175 (La.1986).
The statutory rule as to circumstantial evidence is that, assuming every fact to be proved which the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. LSA-R.S. 15:438.[1] The circumstantial evidence rule is not a stricter standard of review than the more general reasonable juror's reasonable doubt formula, but a helpful methodology for its implementation by an appellate court in cases which hinge upon the evaluation of circumstantial evidence. State v. Moore, supra.
To support a conviction for possession of a controlled dangerous substance, the state must prove that the defendant was in possession of the illegal drug and that he knowingly possessed the drug. State v. Walker, 514 So.2d 602 (La.App. 4th Cir.1987).
The state need not prove that the defendant was in actual physical possession of the drugs found; constructive possession is sufficient to support a conviction. State v. Moore, supra; State v. Walker, supra.
A person is in constructive possession of a controlled dangerous substance if it is subject to his dominion and control and he had knowledge of its presence, even though it is not in his physical possession. *594 State v. Abram, 465 So.2d 800 (La.App. 2d Cir.1985), writ denied 469 So.2d 983 (La. 1985).
Guilty knowledge is the essential element and the determination of whether there is possession sufficient to convict depends upon the facts particular to the case. State v. Trahan, 425 So.2d 1222 (La.1983).
The mere presence in the area where narcotics are discovered, or the mere association with the person who does control the drug, is insufficient to support a finding of possession. State v. Moore, supra. However, the fact finder may draw reasonable inferences based upon the evidence presented at trial and may consider several factors, including the defendant's access to the area where the drug was found; the evidence of recent drug use by the defendant and the defendant's physical proximity to the drugs. State v. Moore, supra.
In the present case, the state presented ample evidence upon which the jury could base a finding that the defendant had constructive possession of the contraband found in the apartment.
The evidence clearly revealed that the apartment was occupied by the defendant. When he was found, he had locked himself in the apartment, was the sole person in the apartment and was exercising control over the area. An expired driver's license belonging to the defendant was in the apartment listing the residence as his address. Correspondence addressed to the defendant from his attorney at the residence was also found, as was a credit card receipt listing the residence as the defendant's address. Books and catalogs dealing with antique automobiles were found in the apartment and the defendant kept an antique automobile at the residence. In discussions with law enforcement officers, the defendant indicated that this was his residence and that the books and catalogs belonged to him. While law enforcement officials were searching the apartment, the defendant asked for, and obtained, his monogrammed bathrobe. The closet in the bedroom contained nothing but men's clothing and shoes.
The evidence also shows that the defendant had dominion and control over the contraband which was found in the apartment. The marijuana and cocaine found on the coffee table were found in plain sight, leaving no chance that the defendant was not aware of the presence of the drugs. One partially burned marijuana cigarette was found in an ash tray by the bed where the defendant was resting. The smell of marijuana was prevalent in the air in the bedroom, evidencing recent drug use. The defendant was also found alone in the apartment.
The defendant presented evidence in an attempt to refute the state's contention that he had dominion and control over the drugs found in the apartment. The defendant's grandmother testified that although the defendant had a key to the apartment, she also had a key and her granddaughter had a key as well. She testified that the granddaughter had entertained friends in the apartment earlier in the evening. No evidence was offered to substantiate this statement and the granddaughter did not testify.
The defendant also presented his girlfriend's testimony, apparently to show that he lived with her, rather than in the apartment searched by the police. However, she stated that the defendant slept at her residence only occasionally, that he did not keep his clothing at her house, that his children did not live at her residence and that on the evening the search warrant was executed the defendant said that he was going "home to his grandmother's house." Apparently, this testimony did not convince the jury that the defendant lived at his girlfriend's residence.
Given all these facts, there was sufficient evidence upon which a rational trier of fact could conclude beyond a reasonable doubt that the defendant was in constructive possession or attempted possession of the contraband found in the apartment.

SENTENCE
The defendant claims that the trial court improperly considered his arrest on the two *595 present offenses when sentencing him in another case, and in failing to properly follow the guidelines of LSA-C.Cr.P. Art. 894.1 in the imposition of the present sentences. The defendant argues that, in effect, he was punished twice for the offenses in this case and that the court's action constituted a violation of his rights against double jeopardy under LSA-La. Const.1974, Art. 1 § 15. This argument is meritless.
In selecting a proper sentence, a trial judge is not limited to considering only a defendant's prior convictions, but may also properly review all criminal activity. State v. Jenkins, 419 So.2d 463 (La. 1982); State v. Derry, 516 So.2d 1284 (La.App. 2d Cir.1987), writ denied 521 So.2d 1168 (La. 1988); State v. Palmer, 448 So.2d 765 (La. App. 2d Cir.1984), writ denied 452 So.2d 695 (La.1984).
The trial court was acting within the bounds of its sentencing discretion in imposing sentence in the defendant's prior drug conviction by considering the defendant's involvement in the present case. The court was also within its discretion in choosing, under the circumstances, not to suspend the defendant's sentence in the prior case. The court did not punish the defendant for the present offenses when imposing the sentence for his prior conviction.
In the present case, the transcript of the defendant's sentencing shows that the court properly considered the guidelines of LSA-C.Cr.P. Art. 894.1 in tailoring the sentencing to both the offender and the offenses. The defendant was not subjected to double jeopardy in the imposition of either his prior sentence or the sentences imposed in this case.

MISTRIAL
The defendant contends the trial court erred in refusing to grant a mistrial after two of the state's witnesses referred to the residence in question as belonging to the defendant, in contravention of the trial court's in limine order barring such comments.
Before the trial on the merits began, the defendant was given a hearing on his motion in limine. In connection with that motion, the defendant argued, among other things, that the law enforcement officials who executed the search warrant should be instructed to refrain from referring to the residence at which the defendant was arrested and at which the contraband was seized as belonging to the defendant.
Defense counsel stated on the record that they were aware that one witness, Sgt. Jay Via, would testify that the defendant told him that the residence was his. Defense counsel excluded Sgt. Via from the motion in limine. The trial court granted the motion as to other law enforcement officials and ordered the prosecutor to instruct the witnesses to refrain from indicating that the residence belonged to the defendant.
During the trial on the merits, the prosecutor asked Deputy Mike Howe the following questions:
Q. Were you so ... Were you part of the team that executed this search warrant at Isaac ... the ... at 2108 Standifer on July 29, 1987.
A. Yes sir, I was.
The witness was then asked to examine some items of evidence and was asked if he had seen the items before and if so, where he had seen them. Deputy Howe replied:
A. On that search warrant, ah, July 29th, 1987 at Mr. Matthews residence.
Q. Did you find those items?
A. Yes, sir.
Q. Where inside the residence did you find them?
A. Ah, on the west wall of what we called his living room, which was a ...
Q. Okay. Well, without giving that conclusion to the jury....
By Mr. Morgan: Your Honor, may we approach the bench?
By The Court: Certainly.
By The Reporter: Counsel approaches the bench for a short conference.
After the bench conference, defense counsel then, for the record, asked the court to *596 "note my objection as to something that we argued earlier out of the presence of the jury." Defense counsel did not request a mistrial or request that the court admonish the jury to disregard the statements by Deputy Howe indicating the defendant's possession of the residence.
Later, while questioning Sgt. Via, the witness was asked to explain to the jury how the search team secured the area. Sgt. Via indicated that forcible entry was made into the area "in which the defendant, Mr. Matthews, was residing inside of the residence."
At that point, defense counsel moved for a mistrial. Following argument on the issue, the trial court denied the motion for mistrial, but ruled that the jury would be admonished to disregard Sgt. Via's statement.
The defendant contends that the central issue at trial was whether he had dominion and control of the residence and therefore the contraband found therein. He argues that the statements made by the prosecution witnesses so unduly prejudiced him that he was denied a fair trial. The defendant's contention is meritless.
The trial court's action was proper under LSA-C.Cr.P. Art. 771 which provides in pertinent part:
In the following cases, upon request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
. . . . .
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.[2]
Mistrial is a drastic remedy only to be declared when unnecessary prejudice results to a defendant. Determining whether such prejudice has resulted is within the sound discretion of the trial judge. State v. Harriman, 469 So.2d 298 (La.App. 2d Cir.1985), writ denied 474 So.2d 1304 (La. 1985).
When a challenged remark is made by a witness and not by the judge or another court official, a mistrial is not mandatory under the Code of Criminal Procedure. An admonition is the proper remedy. However, a mistrial may be granted if the remark is so prejudicial that an admonition to the jury to disregard the statement is not sufficient to assure the defendant a fair trial. State v. Prudholm, 446 So.2d 729 (La.1984).
In the present case, the court acted correctly in admonishing the jury to disregard statements regarding the defendant's possessory interest in the residence. The record shows that the state presented ample evidence in forms other than conclusory statements by the witnesses to show that the defendant had dominion and control over the area where the contraband was seized. In addition, even though the trial court had ordered the district attorney to instruct the witnesses not to refer to the property as the defendant's residence, the defendant has not suggested nor argued that the prosecution or the witnesses intended to violate the court's order in making such statements.
Therefore, under all these circumstances, we find that this assignment of error has no merit.
This assignment of error is without merit.

JURY VENIRE
The defendant argues that the trial court erred in denying his motion to quash the jury venire on the basis of selection *597 procedures which fail to insure representation of a fair cross section of the community.
Prior to trial, the defendant filed a motion to quash the jury venire. He claimed that, because the venire was selected from lists of licensed drivers and registered voters in the parish, it failed to insure a representation of a fair cross section of the community.
On appeal, the defendant argues that other sources, such as telephone listings and church membership roles, should have also been utilized in choosing the jury venire in order to provide a representative cross section of the community. This argument is meritless.
LSA-C.Cr.P. Art. 419(A) provides:
A general venire, grand jury venire or petit jury venire shall not be set aside for any reason unless fraud has been practiced, some great wrong committed that would work irreparable injury to the defendant, or unless persons were systematically excluded from the venires solely upon the basis of race.
In State v. Sheppard, 350 So.2d 615 (La.1977), the Supreme Court upheld a general venire composed of a list of registered voters and persons with driver's licenses residing in the parish, where there was no showing that such a selection process was discriminatory. The jurisprudence allocates to the defendant the burden of establishing fraud or that some irreparable injury was caused by the jury selection process and in the absence of such a showing, a jury venire will not be set aside. State v. Procell, 332 So.2d 814 (La.1976); State v. Lynch, 323 So.2d 781 (La.1975); State v. Liner, 397 So.2d 506 (La.1981); State v. Brown, 395 So.2d 1301 (La.1981).
In the present case, the defendant failed to present any evidence that the jury venire selection process was conducted fraudulently or caused the defendant any irreparable injury. Therefore, this assignment of error is without merit.

PROBABLE CAUSE TO ISSUE SEARCH WARRANT
The defendant contends that the trial court erred in failing to grant his motion to suppress the evidence which was seized from the apartment because the search warrant was not based upon sufficient probable cause. The defendant also contends that the affiant, a law enforcement official who helped conduct the search pursuant to the warrant, misrepresented the facts in his affidavit establishing the reliability of his confidential informant.
LSA-Const., 1984, Art. 1 § 5 provides that no warrant shall issue without probable cause supported by oath or affirmation. LSA-C.Cr.P. Art. 162 provides that a search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for the issuance of the warrant.
The essential facts to establish probable cause to issue a search warrant must be contained in an affidavit submitted to a judge. State v. Slaid, 508 So.2d 597 (La.App. 2d Cir.1987), writ denied 513 So.2d 819 (La.1987); State v. Wood, 457 So.2d 206 (La.App. 2d Cir.1984).
The process to be used in determining probable cause to issue a search warrant or arrest warrant was addressed in State v. Rodrigue, 437 So.2d 830 (La.1983). There the court stated that the process for determining probable cause for the issuance of search and arrest warrants does not involve certainties of proof beyond a reasonable doubt, or even a prima facie showing, but rather involves probabilities of human behavior as understood by persons trained in law enforcement and based on the totality of the circumstances. The court stated that the process simply requires that enough information be presented to the issuing magistrate to enable him to determine that the charges are not capricious and are sufficiently supported to justify bringing into play the further steps of the criminal justice system. The court also stated that the review of a magistrate's determination of probable cause prior to issuing a warrant is entitled to significant deference by reviewing courts and marginal cases should be resolved in favor of a *598 finding that the issuing magistrate's judgment was reasonable.
In many instances, information in an affidavit to establish probable cause is based upon hearsay information provided by a confidential informant. An affidavit may be based entirely upon hearsay if it contains sufficient details to allow a magistrate to reasonably infer that the informant and his information are reliable. State v. Stephenson, 387 So.2d 1111 (La.1980).
Recitations in an affidavit that the informant has previously given information leading to arrest are generally adequate to support the informant's reliability. State v. Stephenson, supra.
In Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court established a totality of the circumstances analysis to determine whether an affidavit based on hearsay established probable cause for a search warrant to issue. The court stated that the task of the issuing magistrate is simply to make a practical common sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.
Even if a search warrant is invalid because of deficiencies in the affidavit, the evidence seized may be admissible under the good faith exception to the exclusionary rule established in U.S. v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). However, there are several exceptions to the good faith exception, including situations in which the magistrate or judge issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for reckless disregard for the truth. State v. Wood, supra.
A defendant bears the burden of going forward on an allegation that an application for a search warrant contains intentional misrepresentations such as would make it invalid. State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.1988), writ denied 521 So.2d 1143 (La.1988).
In the present case, the defendant argues that the affiant misrepresented in his affidavit that other informants and police officers directly observed and confirmed the information provided by the confidential informant regarding this defendant. The defendant contends that at the hearings on the motion to suppress and the motion to disclose the identity of the confidential informant, the affiant contradicted the statements made in his affidavit.
The record does not support the defendant's argument that the affiant, Officer James Fried of the Metro Narcotics Unit, misrepresented the reliability of his informant. At the hearings on the motion to suppress and the motion to disclose the identity of the confidential informant, Officer Fried clarified the statement in the affidavit. The officer testified that general information provided by the informant in the past had been verified by other informants and other police officers. Contrary to the defendant's contention, the affidavit does not refer to specific acts of the defendant which were corroborated by other informants and police officers, but refers to general aspects of the case which were corroborated. Therefore, the defendant's contention that Officer Fried's testimony contradicted his affidavit is unfounded.
We also find no merit in the defendant's contention that the affidavit in support of the search warrant did not establish probable cause to believe that contraband would be found at the defendant's residence. In his affidavit, Officer Fried established the reliability of his informant by stating that the informant had previously participated in a controlled buy of controlled dangerous substances from another person; the informant had also given the officer information which led to two felony arrests and one misdemeanor arrest. The informant stated that several purchases of cocaine had been made from the defendant at the defendant's residence. The affidavit also stated that the informant had participated in a controlled purchase of cocaine from this defendant at his residence at *599 2108 Standifer within forty-eight hours before the warrant was issued. The substance obtained was field tested and proved to be cocaine. The controlled buy was made with money from which the affiant obtained serial numbers. When the controlled buy was made, the defendant told the confidential informant there would be additional cocaine available for purchase at 2108 Standifer.
The totality of the circumstances in this case supports the trial court's finding that the affidavit in support of the search warrant contained sufficient facts to enable the issuing judge to make a common sense decision that a fair probability existed that contraband would be found at the defendant's residence. Therefore, the trial court was correct in denying the defendant's motion to suppress evidence.

CONCLUSION
For the above stated reasons, we affirm the convictions and sentences of the defendant, Albert Isaac Matthews.
AFFIRMED.
NOTES
[1] This case was tried in 1988, prior to the effective date of the Louisiana Code of Evidence, on January 1, 1989. Therefore, the former statutes dealing with evidence are utilized in this opinion.
[2] A police officer is not a "court official" within the meaning of LSA-C.Cr.P. Art. 770 requiring declaration of a mistrial on motion of the defendant when immaterial and irrelevant prejudicial remarks or comments are made during trial within the hearing of the jury. State v. Hardy, 344 So.2d 1018 (La.1977).