597 So.2d 1105 (1992)
STATE of Louisiana, Appellee,
v.
Donald R. HARRIS, Appellant.
No. 23498-KA.
Court of Appeal of Louisiana, Second Circuit.
April 8, 1992.
John Michael McDonald, Shreveport, for appellant.
Richard Ieyoub, Atty. Gen., Baton Rouge, Paul J. Carmouche, Dist. Atty., Shreveport, Liddell Smith and Tommy J. Johnson, Asst. Dist. Atty., Shreveport, for appellee.
Before MARVIN, VICTORY and BROWN, JJ.
MARVIN, Chief Judge.
Having been charged with possession of cocaine with intent to distribute and convicted by a jury of the lesser, but responsive, crime of attempted possession of cocaine that was found on the floor of a room in a home owned by another in which he did not live, defendant appeals that conviction.
Defendant contends the evidence was legally insufficient to convict him of attempting to possess, actually or constructively, the cocaine found in the house.
We agree with defendant's contention and reverse the conviction.

*1106 STATE'S BURDEN
The state had the burden of proving beyond a reasonable doubt that defendant had dominion or control over, and thereby knowingly and specifically intended to possess, the cocaine found on the floor. LRS 40:967 C, 979 A; LRS 14:27; Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Bell, 566 So.2d 959 (La.1990); State v. Matthews, 552 So.2d 590 (La.App.2d Cir.1989), writ denied; State v. Abram, 465 So.2d 800 (La.App.2d Cir.1985), writ denied; LRS 15:271, 438.
Only scant facts,
four persons were in the home when police arrived to investigate otherwise unknown "subjects" who were reported to have been smoking an "illegal substance" there and whom the homeowner wanted removed from her home;
the homeowner and perhaps an unknown male and female lived in the home;
defendant did not live there;
cocaine was found by police on the floor of the front room behind a couch behind which defendant walked and on which the defendant and another sat when police first saw them,
were proved by police testimony. From these scant facts the conclusion that defendant placed the cocaine on the floor, either before or after police arrived, is not the only "reasonable" conclusion. From the same scant facts, the conclusion is equally "reasonable" that the cocaine was placed on the floor by one of the "subjects" who may or may not have been in the home when police arrived.
Notwithstanding the jury's conclusion, we find that the state did not meet its burden of proof because the evidence fails to exclude every reasonable hypothesis of defendant's innocence. LRS 15:438.

FACTS
Four persons were in the Shreveport home of Mrs. Lula Arkansas, a 90-year-old grandmother, about 8:00 p.m. on September 3, 1989, when two policemen arrived there.
The four persons in the homeMrs. Arkansas, her two grandchildren, Clarence and Bernice Arkansas, and the defendant, Harrisdid not testify or give any statement to the police incriminating any particular person, by name or by description, of any crime. Only the police testified.
Each dispatched police officer stated he was separately directed to the home, being told in the dispatch that the homeowner wanted removed from her home, "subjects," who were reportedly smoking an "illegal substance." Over defendant's objection, these statements were admitted at trial (!) solely for the limited purpose of explaining why the officers went to the home. See discussion of this issue in State v. McNair, 597 So.2d 1096 (La.App.2d Cir. 1992), and in State v. White, 559 So.2d 541 (La.App.2d Cir.1990), and cases cited therein.
Because we reverse on the sufficiency assignment, we shall not definitively pass on this assignment but shall assume the "details" of the statements do not amount to an assertion at trial that the defendant had committed or would commit a crime. State v. Thompson, 331 So.2d 848 (La. 1976).
In any event, the "subjects" whom the officers referred to are not otherwise numbered, named, identified or described in the record by the two officer witnesses.
Moreover, the trial court cautioned the jury about the effect of the testimony why the police went to the home of Mrs. Arkansas:
the reason why the officer was sent there is not something to be taken against the defendant. It is simply the reason why he went there.
Therefore and even assuming the statements why the officers went to the home were admissible, the statements were admitted *1107 solely for that limited purpose. The jury could not have based its verdict on the "truth" that Harris was one of two or more "subjects" who was reported to police as smoking an illegal substance in the home. That conclusion beyond a reasonable doubt is not legally permissible.
Officer Artison first arrived, followed a minute or two later by Officer Cook. Artison met Clarence Arkansas, the grandson, on the porch of the home. Artison said that Clarence explained to him that he was the one who made the telephone call to police at his grandmother's request.
From the porch Artison saw defendant Harris and Bernice Arkansas, Clarence's sister, sitting on the couch in the front room of the home. When both arose and Harris walked behind the couch and Bernice walked to one end of the couch, Artison, through the screen door, ordered them to sit back down on the couch and remain there. They complied with Artison's order. Artison and Cook then entered the home, learned that Mrs. Arkansas was the homeowner and obtained her consent to search the home.
On the floor behind the couch where Harris sat with Bernice, Artison found a matchbox containing the cocaine. He then advised both Harris and Bernice Arkansas of their Miranda rights. Artison placed Harris under arrest, explaining at trial that he had no evidence to arrest anyone else in the residence. The quantity of cocaine in the matchbox suggested to police that it was more than a user would possess for personal use. The police concluded that no evidence was present to indicate any recent drug use in the home. Harris was arrested and charged with possession of cocaine with intent to distribute.
Artison testified that he kept Harris and Bernice Arkansas under his observation from the time he first saw them sitting on the couch until he had found the matchbox behind the couch, saying, "I never took my eyes off them." He said that neither Harris nor Bernice Arkansas dropped anything over the couch while he observed them.
Artison acknowledged at trial that it was "possible" for either Bernice or Harris to have dropped the matchbox before he began his observation.
The police found other drug paraphernalia (plastic baggies, etc.) in a bedroom of the home which contained both men's and women's clothing. Neither officer determined who occupied the bedroom that contained the drug paraphernalia or who lived in the home other than Mrs. Arkansas.
Artison testified that he could not "connect" Harris with the paraphernalia found in the bedroom. Both officers agreed that Harris did not have access to the bedroom while he was under observation and that it would have been impossible for Harris to have placed or thrown the drug paraphernalia in the bedroom from where he was sitting on the couch.
Artison testified that he determined that Harris did not live in the home. Artison did not find cocaine or any contraband on Harris's person, but "seized" $281 in cash he found in Harris's pocket when he arrested and searched him.

SUFFICIENCY OF THE EVIDENCE
The preferable procedural vehicle for raising the issue of sufficiency of the evidence to convict is by a motion in the trial court for post-verdict judgment of acquittal. CCrP Art. 821.
Harris did not present the sufficiency issue to the trial court, but raises it on appeal by an assignment of error which he argues. At the appellate level, we must determine whether or not the evidence in this record meets the constitutional standards of Jackson v. Virginia, supra, now codified in CCrP Art. 821 and LRS 15:271, 438.
The standard is whether or not, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Baudoin, 583 So.2d 907 (La.App. 1st Cir.1991).
The statutory rule as to circumstantial evidence is that, assuming every fact to be proved which the evidence tends to prove, in order to convict, the circumstances must *1108 exclude every reasonable hypothesis of innocence. LRS 15:438. The circumstantial evidence rule is not a stricter standard of review than the reasonable doubt standard. The standard for the trier of fact and for the reviewing court is whether the conclusion derived from the verdict is "reasonable," when determined objectively, and, if so, whether that reasonable conclusion excludes all other reasonable conclusions. LRS 15:438, 271. The test for sufficiency of the evidence to convict, whether expressed in terms of doubt or hypothesis, is the reasonableness of the ultimate conclusion on the facts and inferences which may be drawn from those facts in the particular case. State v. McFadden, 476 So.2d 413, 425 (La.App.2d Cir.1985), writ denied.

CONSTRUCTIVE POSSESSION
The state need not establish actual or attempted actual possession of a controlled dangerous substance in order to support an attempted possession conviction. Constructive possession is sufficient. State v. Jackson, 557 So.2d 1034 (La.App. 4th Cir.1990).
A person not in physical possession may be in constructive possession of a controlled dangerous substance if the substance is subject to that person's dominion and control and he has knowledge of the substance. State v. Matthews, supra.
Proximity to a drug or association with a possessor may establish a prima facie case of drug possession when colored by other evidence. State v. Johnson, 404 So.2d 239 (La.1981). The mere presence of someone in the area where a controlled dangerous substance is found, or mere association with another who possesses the substance, is insufficient to constitute constructive possession. Id.; State v. Matthews, supra.
Several factors have been noted to be pertinent to the inquiry whether an accused who is in the residence of another is in constructive possession of contraband found in that residence: (1) whether the accused knew contraband was in the residence; (2) whether the accused had been in the residence on prior occasions; (3) how long the accused was in the residence prior to his arrest; (4) whether the accused had access to the residence; (5) whether the residence was frequented by drug users; (6) whether there are indications of recent drug use; (7) whether any contraband was found on the person of the accused; and (8) whether the accused had any control over the contraband found in the residence. State v. Abram, supra. In McNair, supra, the defendant was attempting to flush contraband (money proceeds from dealing in contraband) down a commode when police arrived. Also compare State v. Johnson, 404 So.2d 239 (La.1981).

SUMMARY
Only Officers Artison and Cook testified about what occurred, or was reported to have occurred, in the home, either before or after they arrived there. None of the four persons whom they found in the home testified. None of the Abram-McNair-Johnson, supra, factors incriminates Harris.
Although Officer Artison found the matchbox behind the couch where he saw Harris walk and behind where Harris had been sitting, Artison did not otherwise "connect" Harris to the matchbox or to the home in which it was found. Artison saw both Bernice and Harris rise from the couch and walk near the couch. He ordered both to sit back down.
Artison's acknowledgment that it was "possible" for either Harris or Bernice Arkansas to have dropped the matchbox behind the couch, is not legally sufficient, under the constitutional standard, to convict Harris of the elements of attempted possession of cocaine. The record "picture" verbally painted by the officers is a faint and dim sketch and is not "colored" by other evidence.
On this record we must reverse the conviction and discharge defendant.

DECREE
Conviction reversed. Defendant discharged.
*1109 BROWN, J., dissents with written reasons.
BROWN, Judge, dissenting.
Fourteenth Amendment Due Process requires a review of criminal convictions to determine if any rational juror could have found that the crime was proven beyond a reasonable doubt. The evidence, however, must only be viewed in the light most favorable to the prosecution. Jackson, supra; State v. Mathews, 375 So.2d 1165 (La.1979); LSA-C.Cr.P. Art. 821. Essential to a review of the sufficiency of evidence is that a reviewing court is not to substitute its judgment of what the verdict should be for that of the jury. Because the evidence must be considered from a pro-prosecution standpoint, jurors' credibility calls and weighing of evidence is protected.
LSA-C.Cr.P. Art. 821 codifies the Jackson standard and provides for a post-verdict of acquittal if the evidence viewed in a light most favorable to the state "does not reasonably permit a finding of guilt." The majority opinion states "... the conclusion that defendant placed the cocaine on the floor ... is not the only `reasonable' conclusion." When viewed from only a pro-prosecution standpoint the evidence reasonably permitted a finding of guilt. The majority's weighing of other hypotheses is an usurpation of the jury's responsibility. Our review is to insure substantial justice and not take over the jury's fact-finding duty.
In this case defendant was observed at all times by Officer Artison. When he saw Officer Artison, defendant stood up and walked behind the couch. Defendant was ordered to return and sit on the couch. No other person walked behind the couch. Officer Artison found the cocaine in a matchbox exactly where defendant had stood behind the couch. Neither defendant or his girlfriend testified. The evidence would reasonably permit a finding of guilt.